FANNY RITCHIE, ADM'X., v. J. R. SWEET AND OTHERS.

1—In 1862 the payee of a note, which was executed in 1859 and payable in gold, accepted from the maker Confederate money in payment, and surrendered the note to the maker. *Held,* in the absence of duress, that the transaction was an executed one, and the payee can not maintain a suit for the money specified in the note.

2—This court adheres to the principle announced in its previous decisions on contracts and transactions based on Confederate money, viz: If such contracts or transactions remain executory, suits to enforce or execute them will not be entertained by the courts; but, on the other hand, when such contracts or transactions have been executed without duress or fraud, the courts will not maintain suits to rescind or reopen them.

APPEAL from Bexar. Tried below before the Hon. T. H. Stribling.

On November 14, 1859, Sweet made his note for $6500, with two sureties, payable to Samuel Ritchie twelve months after date, with interest. On the 29th of July, 1862, Ritchie received from Sweet Confederate notes to the amount due, and entered satisfaction of the promissory note upon its back, surrendering it to Sweet at the same time. Ritchie also accompanied Sweet to the county clerk's office and executed a release of a deed of trust made by Sweet as a security for the note.

On the 2d of June, 1865, Ritchie instituted this suit in the District Court of Bexar county, to recover of Sweet and his sureties the amount of the note and interest. In his petition he alleged that on the 29th day of July, 1862, he, " acting under illegal military authority and coercion, and without

consideration, was induced to surrender and deliver over to the said James R. Sweet the said original note, and also to give a release of the premises conveyed in the said deed of trust; that said action of your petitioner was not voluntary, but forced under an illegal rule of martial law, and wholly without proper or adequate consideration."

The defendants answered, relying on the payment in Confederate money, alleging that it was received by Ritchie voluntarily and without duress, either of force or threats.

Samuel Ritchie died pending the suit, and his widow, as administratrix, became plaintiff in his stead.

The cause came to trial in September, 1868. The issue of fact between the parties was as to whether the Confederate money was accepted by Ritchie under duress or voluntarily. The plaintiff proved that martial law had been declared by the Confederate military authorities in the spring of 1862, and that on the 1st of July, 1862, General Hebert, then commanding at San Antonio, had issued an order that Confederate money must be taken for purchases and in payment of debts, under penalty of arrest for disobedience; and that by these measures much apprehension was excited in the minds of many.

The defendants, on the other hand, proved that Ritchie was a warm and decided adherent of the Confederate cause; that he rather prided on receiving Confederate money for debts due him, and contended that every one should so receive it; that he spoke of having received it from Sweet, and made no com plaint that he did so under any sort of compulsion. There was evidence, also, that in the spring and summer of 1862, Confederate treasury notes were taken generally at par in Western Texas, and that cotton could be bought with them at its current rate of nine cents per pound.

The jury returned a verdict for the defendants; judgment was rendered accordingly, and a new trial refused.

The charges in the court below, so far as material, are stated in the opinion.

*G. W. Paschal* and *G. W. Paschal, Jr.*, for the appellant, argued the case at length, contending that the Confederate notes could not constitute a payment, nor support a release. They cited Griswold v. Wadrington, 16 Johnson, 439; Peltz v. Long, 40 Miss., 536, and other cases.

*H. P. Brewster*, for the appellees.

MORRILL, C. J.—Suit by the payee of a note against the maker. Answer of the defendant that he owes nothing. Amended petition states that in 1862 the plaintiff surrendered the note to defendant, and received the amount called for in Confederate money—that this was no payment, because: First—it was received through duress; second—it was a worthless, spurious, void, illegal, unconstitutional, treasonable and rebellious currency.

The judge charged the jury: First—that a voluntary reception of the Confederate money, in full payment of the note by the payee would be good payment. Second—that if the plaintiff received the Confederate note through duress, it was no payment; duress was defined to be a fear of the military authorities, alleged in the petition as the duress.

The jury found for the defendant upon the second charge given.

Plaintiff appeals, and as there is no pretence but that the jury were fully authorized to find for the defendant upon the testimony, the legality of the first charge is regarded by the plaintiff as erroneous.

That Confederate money was, in the language of plaintiff, illegal, unconstitutional, treasonable and rebellious, may be assumed as correct. It has been repeatedly decided by this court that an executory contract, the performance of which, or the consideration of which, was Confederate money, would not be considered legal, and whenever any party has called upon this court for the enforcement of a contract, which, upon its face or by testimony, is made to appear was based upon Confederate money as a consideration, or to be executed and ful-

filled by the payment of it, he has universally received no favor, and has been taxed with all the costs of court. As the courts of other States have agreed with the decisions of this court herein, we have no doubt of the correctness of our opinions, and see no cause to alter our decisions herein. The reason why the court will not enforce an illegal contract is, that they will not be the handmaids to what is subversive of law—that courts are courts of law, and not courts of or for illegality. And, for this very reason, courts will not lend their aid to rescind an illegal executed contract.

It is admitted that the executory contract made by the parties was legal, but it is insisted by one party that because this legal executory contract was abolished, and an illegal executed contract was substituted therefor, that both parties were guilty of an illegal act, and, therefore, the courts should lend their aid to rescue him from his own illegal acts, voluntarily made. This is virtually calling upon the court to make a contract for the parties different from the one they made themselves. When the maker of the note, in consideration of six thousand dollars received from the payee, promised to repay this sum at a specified time, with twelve per cent. per annum interest, a contract was made, executed by the payee and executory on the part of the maker of the note. It was in the power of the payee of the note to insist upon the execution of this contract, and the courts would lend their aid in enforcing its performance. But it was also in the power of the parties to abandon that contract, by the substitution of a new executory or executed contract in lieu thereof; and if this was done voluntarily, freely, without compulsion, fraud, or any of those incidents or other attendant circumstances that authorize a court to interpose its power, the parties are estopped by their own acts. In the case before the court, Ritchie was authorized to receive the money called for by the note, and it was in his power to make a gift of the note either to the maker or any other person, or exchange it with either the maker or any other person, for any other commodity that might be agreed on by the parties. The

allegation in the petition that "the payment of the note in Confederate treasury notes was with spurious, void, illegal, unconstitutional, treasonable and rebellious currency, and, therefore, such pretended judgment was worthless, fraudulent and void; and now petitioner brings back and tenders to the defendants the full amount of such Treasury notes, and interest thereon, and brings them into court and prays that said note be delivered back to her," etc., is simply stating that plaintiff did not act with either patriotism, wisdom, or in compliance with the law, and calls upon the court to relieve the plaintiff of his own rebellious, foolish and illegal acts, voluntarily made. The counsel for appellant and plaintiff makes a very excellent argument to substantiate the decision made by this court in Smith v. Smith, Linder v. Barbee, McGehee v. Goodman, and Donley v. Tindell, all based upon the maxim *ex dolo malo non oritur actio*, but he does not seem to realize that, in complying with his request, we should virtually overrule those decisions. Plaintiff admits that if "the whole transaction rested upon the voluntary exchange of gold for Confederate notes, both parties being *particeps criminis*, Ritchie could not recover back his gold."

The learned counsel states the whole case in a nutshell. The note of Sweet, which Ritchie held, called for six thousand dollars in gold, and stood in the place of so much gold—by the aid of the courts was convertible into gold. This note, or what it represented, was voluntarily exchanged by Ritchie for Confederate notes. The transaction was complete in itself. It was an executed contract, and needed no confirmation, and admitting that the contract was liable to the epithets applied to it by the counsel, it was still the voluntary contract of the parties, and "*ex dolo malo non oritur actio.*"

The plaintiff's argument assumes that the transaction between the parties, whereby Ritchie received the Confederate currency in exchange of the note, was illegal, and therefore a nullity, and the parties are to be regarded in their attitude of

XXXII—21.

debtor and creditor, as if this transaction had never existed. Upon this he bases his argument. As we have endeavored to show, such is not the position that the plaintiff has assumed, unless he was acting under duress. This brings us to the second charge of the court, and was in fact the only question that could arise by the pleadings. The testimony was submitted to the jury, whose special province it was to say whether Ritchie was acting freely or by duress or fear. Their verdict negatived duress or fear, and leaves the parties entirely free to make the contract. They made the contract and simultaneously executed it. If, as the plaintiff alleges, it was "illegal, rebellious, unconstitutional and treasonable," he must be governed by the law maxim *nemo allegans suum turpitudinem audiendus.*

The judgment is affirmed.

Affirmed.