JOSEPHINE ALLEN v. W. R. BAKER.

1. Though a receipt given by the wife for money due the husband was not binding on the husband when the payment was made in Confederate money without his consent or authority, yet where the hasband died after such a payment, and the wife who had given the receipt became his executrix and sole heir, she is bound by her receipt in the absence of fraud, covin, misrepresentation, or undue influence.

2. One who has voluntarily executed a contract by paying or receiving Confederate money in satisfaction of a demand will not be relieved, but left where his own action has placed him.

APPEAL from Harris. Tried below before the Hon. James Masterson.

This suit was instituted by Mrs. Josephine Allen as executrix of the estate of her late husband, Ebenezer Allen, deceased, to recover $7500, with eight per cent. interest per annum from the thirtieth of June, 1864, upon the following obligation:

"Agreement between Wm. R. Baker and Ebenezer Allen, entered into this ninth day of July, A. D. 1859, witnesseth: Whereas, on the thirtieth day of June, A. D. 1859, the Houston and Texas Central Railway Company issued to Ebenezer Allen three hundred shares of its stock, which the said Allen now holds; and whereas, the said Allen, for the consideration hereinafter named, has transferred to the said Baker, by indorsement on the certificate of shares, being No. 575, the said three hundred shares of stock to the said Baker: Now, it is agreed and understood between the parties hereto that of the said three hundred shares one hundred and fifty shares are transferred to and held by said Baker in trust for the said Allen, the trust being as follows: Whereas, an association or joint stock company was formed on the thirtieth

of June past, by articles of association, between said Baker, J. W. McDade, Wm. M. Rice, P. Bremond, and others, ten in number, for the purpose of purchasing and owning the stock of the Houston and Texas Central Railway Company, to the amount of three thousand shares, with the provision to acquire all the stock issued over and above that amount—the stock so acquired to be managed and administered for the common benefit of the associates, in accordance with the provisions of said articles, each of said associates to have or represent three hundred shares: It is understood that the interest of said Allen in said association is one-twentieth, and that said Baker is to hold the one hundred and fifty shares in trust for said Allen, and the remaining one hundred and fifty shares are sold and assigned to said Baker as his own property, in consideration of which he agrees to pay said Allen the sum of seven thousand five hundred dollars on the 30th of June, A. D. 1864. The said Allen to have the benefit of the provisions in said articles contained, relating to the subscription of $350,000 made on the 27th and 28th of April, A. D. 1858, the subscription of Harvey Baldwin of $50,000 having been canceled.

" Witness our hands in duplicate.

　(Signed)                              " W. R. Baker,
　                                       "Eben'r Allen."

Baker in his answer set up four several payments in full discharge, and also a receipt subsequently taken, in which Mrs. Allen acknowledged, in her capacity of executrix, that she had before received $7500 in full discharge of the debt against the estate.

Mrs. Allen craved oyer of this instrument, which being refused, she demurred to so much of Baker's answer; and filed an amended petition by way of replication, in which she stated under oath that she had no recollection.

of ever having given such a receipt; that she executed a receipt for certificates for certain railroad stock, which she did not read at the time, nor did the defendant read it to her, as she had full confidence in Baker, not supposing that he would ask her to sign anything wrong; that it was a deception practiced on her, and that it was not her act and deed; that the several payments set up by Baker were made in Confederate money at a time when it was dangerous to refuse it, her husband being a Union man and a fugitive from the State; that Baker took advantage of her situation and forced the Confederate money upon her against her will, and that the same was illegal and wholly worthless.

Baker filed an amended answer, in which he set up that Mrs. Allen was the sole devisee under the will, that she had received the benefit of the payments, and would be solely benefited by a recovery, and insisted on the binding efficacy of the payments set up in his original answer; that she had received a large amount of property belonging to the estate; and also filed exceptions to her special plea of *non est factum*.

The court overruled Mrs. Allen's exceptions to Baker's plea, and sustained his exceptions to her plea of *non est factum*, to both of which rulings she excepted.

The additional facts connected with the trial are stated in the opinion delivered on a rehearing of the cause.

Verdict and judgment for Baker.

*McConaughey & Fauntleroy*, for appellant, argued that the payment to Mrs. Allen, made without special authority in her to receive Confederate paper, was no legal payment, and that her receipt given in her fiduciary character of executrix could not bind the estate, citing Kleburg v. Bends, 31 Texas, 611; 31 Texas, 446, 557; Prigeon v. Smith, 30 Texas, 171.

*Geo. Goldthwaite & E. P. Turner*, for appellee.— Counsel in support of the position, that a voluntary re- ception of Confederate money in full payment of an ob- ligation by the payee of said obligation is a good pay- ment, cited Vanderhœven v. Nette, 32 Texas, 183 ; Bur- leson v. Cleveland, 32 Texas, 397 ; Donley v. Tindal, 32 Texas, 43 ; Richie v. Sweet, 32 Texas, 333 ; Goodman v. McGehee, 31 Texas, 253 ; Smith v. Smith, 30 Texas, 754; Robinson v. International Life Assurance Society of Lon- don, 42 New York Reps., 54; Cross v. Sells, 1 Heiskel.

Appellee's counsel also argued that the case of Ran- som v. Alexander had no application to this case.

He also insisted that the appellant was estopped from denying her authority to receive Confederate money, if she would now gain by repudiating her agency, and cited Herman on Estoppels, 463.

Also, that a sole devisee under a will, though suing as executrix, who has accepted the same, and received assets of her testator's estate, as such sole devisee, more than sufficient to pay off her testator's indebtedness, stands in the position of her testator, and as such is estopped to deny the validity of her acts, and to plead want of au- thority, when she had voluntarily received Confederate money in payment of an obligation due her testator.

WALKER, J.—There has not been before this court a case precisely like the one at bar.

Mrs. Allen, first as the agent of her husband, Ebenezer Allen, and afterwards as the executrix of his will, re- ceived certain sums of money before the same became due, from the appellee. Ebenezer Allen sold to Baker one hundred and fifty shares of the capital stock in the Houston and Texas Central Railway Company under a contract dated July 9, 1859. Payment was to be made for the stock on the thirtieth of June, 1864.

The war coming on, Allen went into the service of the Confederacy, leaving his wife and child in Texas. Owing, perhaps, to the necessities of Mrs. Allen, she accepted the payments, under authority from her husband, in advance of maturity. In 1863 Allen died, leaving his entire property to his wife, and appointing her the executrix of his will. Mrs. Allen appears to have taken a considerable estate by the devise over and above what was necessary to pay debts.

The defendant payed off his indebtedness in Confederate money. The receipt of Confederate money by Mrs. Allen as the agent of her husband, without an express authority to receive Confederate money, would not have discharged the debt, nor would her receipt as executrix of her husband's will have discharged the debt if there were other heirs, legatees or creditors to complain; but Mrs. Allen is sole legatee under her husband's will, and a handsome estate remains to her, after the payment of debts; and in the absence of fraud, covin, misrepresentation or undue influence, she must be bound by her contracts; and though, in this case, the contract was executed in Confederate money, it is nevertheless an executed contract, against which this court can grant no relief.

The judgment of the District Court is affirmed.

                                        AFFIRMED.


*M. A. Long*, for appellant, filed an able argument for rehearing, which being obtained, he submitted a brief contesting the authority and application of the case relied upon and reported in 32 Texas, 333, of Richie v. Sweet. "That decision was a mere dictum, the question of Confederate money not necessarily arising. The report itself shows that Sweet collected the note sued on in Confederate money when that currency was of par

Opinion of the Court.

value, and like coin could be used to buy cotton at the current rate of nine cents per pound." The note having thus been once fully paid, should not have been again demanded. The second demand was unjust and absurd. There was therefore no occasion for the court to have uttered the dictum about an "illegal executed contract," or to speculate about the effect of substituting an illegal contract for a legal one, etc.

It was also contended that the case of Richie v. Sweet was not a decision of the Supreme Court of Texas, but only by a provisional military tribunal of final resort, appointed by the General of the United States Army commanding the department of Western Texas. The so-called judges, so appointed, held their offices during the pleasure of the officer commanding, and not for the term designated by the Constitution of this State. In no proper sense could such a temporary military tribunal be respected as the Supreme Court of Texas, however learned and able its members.

McAdoo, J., *on rehearing.*—Ebenezer Allen held a written obligation of the appellee, W. R. Baker, for the sum of $7500, executed June 30, 1859, payable five years after date.

On December 11, 1862, Allen (who was at the time in the Confederate military service at Columbia, S. C.) wrote the following letter:

" *W. R. Baker, Esq.:*

"Sir: Please pay to my wife, Mrs. S. J. Allen, all or any portion of the sum of $7500, which will become due and payable from you to me, upon contract for railroad stock, sometime in June (say on or about the twenty-ninth day of that month), 1864, deducting, if you choose, ten per cent. from the day of payment until maturity of

the debt, and her receipt or receipts shall be as good and valid to you therefor as my own would be.

(Signed)                              "EBENEZER ALLEN."

Before this letter was received by Baker, he had paid a small portion of the debt to Mrs. Allen. Payments were made from time to time, until May 15, 1863, when the last payment was made, Mrs. Allen endorsing on the note the several payments. The payments were made in Confederate money.

In the fall of 1863, after the note had been paid off, Ebenezer Allen died at Richmond, Va. He left a will, his wife being sole executrix and sole devisee and legatee of his estate.

She accepted the estate and filed an inventory. The will was proven up in 1864, and in April of that year she received from Baker one hundred and fifty shares of Central Railroad stock, which Baker held for Ebenezer Allen, as trustee, and which said shares of stock were mentioned in the same obligation of Baker for $7500.

She executed to Baker the following receipt:

"Received of W. R. Baker the one hundred and fifty shares of Central Railroad stock named in above contract held by him as trustee; and the agreement to pay $7500 having been heretofore paid, the above contract is declared settled, canceled and annulled.

"HOUSTON, April 25, 1864.

(Signed)                           "JOSEPHINE ALLEN."

This last receipt was executed about a year after the last payment was made, and after the death of Ebenezer Allen—after the probate of the will, after the return of the inventory, and after she had taken charge of the estate as executrix and legatee.

The inventory (showing about $30,000 of assets) did

not embrace the claim against Baker for $7500, though it did include the one hundred and fifty shares of railroad stock embraced in the same contract.

The entire indebtedness of the estate of Ebenezer Allen amounted to less than $2000.

It has been the uniform ruling of this court that contracts based on payment in Confederate money, or tainted with Confederate money considerations, would not and could not be enforced by the courts in this State. But we have also held, and see no reason to change the ruling, that those who have voluntarily executed their contracts, paid and received, in satisfaction of demands, Confederate money, would be left by the courts precisely where they had placed themselves. We see no reason and know no authority for interference in such a case.

This is not an action by creditors of Ebenezer Allen, but of his surviving wife, who acted as his authorized agent, who, in his absence long continued from the State, would have been competent, we think, to act without his special authority; who is his sole legatee; who ratified her own acts as agent after she became alone responsible for them, and who does not, in our judgment, present such equities as entitles her to any relief in this case.

We therefore affirm the judgment of the District Court.

AFFIRMED.